**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**LORI GOODMAN**                                                                                       **PLAINTIFF**

**V.**                             **CASE NO. 3:20-CV-118-ERE**

**ANDREW SAUL, Commissioner,
Social Security Administration**                                                **DEFENDANT**

## **ORDER**

### **I. INTRODUCTION**

On August 11, 2015, Lori Goodman applied for disability benefits, alleging disability beginning August 6, 2015. (Tr. at 51). Her claims were denied both initially and upon reconsideration. (Tr. at 78-80, 84-85). After conducting a hearing on December 7, 2016, an Administrative Law Judge (ALJ) denied Ms. Goodman's application. (Tr. at 12-21). The Appeals Council later denied her request for review (Tr. at 1-4). Ms. Goodman sought judicial review, and on August 23, 2018, this Court remanded and reversed the final decision of the Commissioner under "sentence four." (Tr. at 849). On October 19, 2018, the Appeals Council issued a remand order in accordance with this Court's order. (Tr. at 851-56).

On March 1, 2019, a second hearing was held before a different ALJ. (Tr. 789-817). On March 29, 2019, the ALJ issued a decision denying Ms. Goodman's application (Tr. at 757-81), and on March 1, 2020, the Appeals Council denied her request for review. (Tr. at 747-50). The ALJ's decision stands as the final decision of the Commissioner, and Ms.

Goodman now seeks judicial review.[1]

## II. THE COMMISSIONER'S DECISION

The ALJ first found Ms. Goodman had not engaged in substantial gainful activity since the alleged onset date of August 6, 2015. (Tr. at 759). The ALJ next determined Ms. Goodman had the following severe impairments: remote pelvic fracture/dislocation with remote right total knee replacement (2010); remote right carpal tunnel release (October 2014); left carpal tunnel release (August 2015); impingement with acromioclavicular joint disease and possible cuff tear (status-post arthroscopic bursectomy with mini open anterior acromioplasty and distal clavicle resection – September 2015); mild degenerative disc disease at L3-L4 and L4-L5; idiopathic peripheral neuropathy; and asthma. (Tr. at 760).

After finding Ms. Goodman's impairments did not meet or equal a listed impairment (Tr. at 761), the ALJ determined that she had the residual functional capacity ("RFC") to perform work at the sedentary exertional level with specific additional limitations: (1) she retained ability to sit up to six to eight hours in a routine eight-hour workday, with the ability to stand and/or walk at least one to two hours within an eight-hour workday; (2) she had ability for frequent reaching and handling, with ability for only occasional overhead reaching; (3) she should avoid work in temperature extremes, with avoidance of other potential pulmonary irritants, such as excessive dust, fumes, or odors, and she would require work within climate controlled conditions (i.e., indoors); and (4) she retained ability

---

[1] The parties consented to proceed before a magistrate judge. (ECF No. 4).

to climb, stoop, crouch, kneel and crawl occasionally. (Tr. at 762).

Based on this RFC and testimony from a Vocational Expert ("VE"), the ALJ found Ms. Goodman could perform her past relevant work as a social service worker (DOT 195.107-010; Sedentary (as performed, sometimes ranging into Light); SVP-7 (Skilled)). (Tr. at 780). The ALJ found Ms. Goodman was able to perform this work as generally performed, as classified in the *Dictionary of Occupational Titles* (DOT). *Id*. Thus, the ALJ determined that Ms. Goodman was not disabled. (Tr. at 781).

## III. DISCUSSION

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Ms. Goodman's Arguments on Appeal

Ms. Goodman contends that the ALJ's decision is not supported by substantial evidence. She argues that the ALJ misrepresented the medical record regarding clinical and objective findings that support her impairments, improperly discredited her subjective complaints about the severity of her condition and overlooked evidence about the effect of pain medication on her mental functioning. The ALJ determined Ms. Goodman's medically determinable impairments could reasonably cause her alleged symptoms but that her subjective complaints were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 777). Thus, each of Ms. Goodman's arguments constitutes a challenge to the ALJ's determination that her subjective complaints were inconsistent with the record as a whole.

When evaluating a claimant's subjective complaints, an ALJ must consider objective medical evidence in the record, the claimant's work history, and other evidence concerning "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). If the ALJ rejects the claimant's subjective complaints, the ALJ "must make an express credibility determination explaining the reasons for discrediting the complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (quoting *Singh v. Apfel*,

222 F.3d 448, 452 (8th Cir. 2000)). But the ALJ does not have to explicitly discuss each of the *Polaski* factors; the analysis is sufficient if the ALJ acknowledges and considers the factors before rejecting the claimant's subjective complaints. *Id.* (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)).

The ALJ discounted Ms. Goodman's credibility for several reasons. First, the ALJ found that the objective medical evidence as a whole did not support the intensity, persistence, and limiting effects of Ms. Goodman's symptoms. Second, the ALJ found that evidence regarding Ms. Goodman's daily activities failed to fully support her subjective complaints. Third, the ALJ found that the evidence demonstrated an overall tolerance of medication, despite complaints of debilitating side effects. Ms. Goodman challenges each of these findings on appeal.

"While an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Baker v. Barnhart*, 457 F.3d 882, 892-93 (8th Cir. 2006) (internal quotation omitted). Here, considering objective medical evidence, the ALJ specifically found that "despite numerous diagnostic radiographs, magnetic resonance imaging studies, arterial duplex studies, nerve conduction velocity and electromyography studies, etc., no [test] results . . . fully explain or support the degree of debilitating symptoms and limitations subjectively alleged." (Tr. at 778). Ms. Goodman contends this

5

finding is unsupported, but the ALJ cited numerous examples in the record that support his conclusion.

For example, despite complaints of neuropathy in her feet, Ms. Goodman is not diabetic (Tr. at 803). Neurophysiologic testing of her lower extremities in May 2016 showed no evidence of peripheral neuropathy (Tr. at 530), and electromyography testing showed no radiculopathy or myositis (Tr. at 532). Sciatic nerve studies and arterial duplex studies also yielded normal results. (Tr. at 530, 1040). Regarding her back pain, an MRI of the lumbar spine in July 2016 showed mild degenerative disc disease at L3-L4 and L4-L5 and disc bulging at L4-L5 and L5-S1 (Tr. at 528), but Ms. Goodman's neurologist determined this was not severe enough to warrant any surgical intervention (Tr. at 743). Although Ms. Goodman complained of severe chronic right hip pain, a November 2015 radiograph showed a "[n]ormal-appearing right hip" with no fracture and no arthritic changes. (Tr. at 484). A February 2017 right hip magnetic resonance arthrography showed a degenerative signal within the acetabular labrum with no labral tearing and was "[o]therwise unremarkable." (Tr. at 1029). An October 2018 MRI showed possible "minimal bursitis" in the hip along with "mild osteoarthritis." (Tr. at 1051-52). Following right rotator cuff surgery, radiographs of Ms. Goodman's right shoulder obtained in December 2015 were unremarkable. (Tr. at 515). And at a January 2019 appointment with orthopedic surgeon Russ B. Rauls, M.D., Ms. Goodman had normal range of motion in both her right shoulder and wrist, a negative Tinel's test at the carpal tunnel and cubital

tunnel, normal sensation to the right arm, and she denied numbness, tingling, or wrist pain. (Tr. at 1196).

Although she concedes the ALJ thoroughly summarized the medical evidence that supports her allegations, Ms. Goodman urges that the ALJ ignored significant objective evidence of her impairments. She emphasizes numerous physical exam findings describing limited range of motion, tenderness, and weakness in her back and extremities. And she points to several objective findings that she contends undermine the ALJ's conclusion, specifically: (1) a finding of neuropathy in her left wrist prior to undergoing left carpal tunnel surgery in 2015; (2) a prolonged nerve response that could possibly indicate right S1 radiculopathy in a 2016 nerve study, although electromyography testing revealed no radiculopathy; (3) a degenerative signal within the acetabular labrum in her right hip in an MR arthrography that was "[o]therwise unremarkable"; (4) central annular bulges in her spine that her neurologist determined did not warrant surgical intervention; and (5) right shoulder MRI results from January 7, 2016, revealing internal degeneration of the superior labrum, long head biceps tendinosis with proximal tenosynovitis, mild subacromial/subdeltoid bursitis, and a small 4 x 3 mm articular sided partial tear of the far anterior infraspinatus tendon at the humeral attachment, involving one third of the fiber thickness. The import of the MRI results alone is not entirely clear to the Court. However, Ms. Goodman's orthopedic surgeon, Dr. James D. Allen, reviewed the results that same day, assessed her with chronic/recurrent capsulitis of the shoulder, gave her a steroid

injection and instructed her to follow up approximately five weeks later. Treatment notes made by her primary treating physician on February 9, 2016 indicate Dr. Allen had "d/c [discharged] her from his care as her rt sh [right shoulder] has healed to the best level." (Tr. at 594).

Ms. Goodman also argues the ALJ mischaracterized the medical records by emphasizing irrelevant and nondiagnostic clinical findings that had nothing to do with her complaints of disabling pain. These include objective findings such as "alert and in no acute distress" as well as reported denials of various symptoms such as incoordination, loss of balance, weakness, headache, vision loss, influent speech, loss of consciousness, or disorientation. The Court notes that much of the evidence that Ms. Goodman characterizes as irrelevant bears upon her subjective complaints that pain medication interfered with her mental functioning by making her "fussy and forgetful" (Tr. at 765), giving her "brain fog" (Tr. at 767), and causing symptoms of weakness, fatigue, sleepiness, and blurred vision (Tr. at 764). However, to the extent any of the cited findings are less relevant to her disabling impairments, there is no evidence the ALJ afforded them disproportionate weight in the analysis.

After a thorough review of the medical record, the Court finds that while some of the evidence is consistent with some degree of symptomology, substantial evidence supports the ALJ's factual determination that Ms. Goodman's subjective complaints were not fully consistent with the medical record.

Substantial evidence also supports the ALJ's determination that Ms. Goodman's activities of daily living did not fully support her subjective complaints of disabling pain and other symptoms. Medical records from October 2016 showed she was able to engage in yard work, specifically that she was "bent over planting bulbs" (Tr. at 778), despite having alleged an inability to bend, squat, reach, or use her hands. She testified that her spouse had been ill with cancer for approximately one year and was unable to work, and they provided full responsibility for the care of her 13-year-old grandson since January 2019. (Tr. at 777). She confirmed having a current, valid driver's license and the ability to drive for up to 30 minutes at a time. She reported the ability to prepare small or quick meals, shop for the "basics" once per week for about 30 minutes, pay bills, and handle a savings account. See *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (claimant's care of 11-year-old child, driving, fixing simple meals, doing housework, shopping for groceries, and handling money held to be "extensive daily activities" unsupportive of alleged inability to work).

Although Ms. Goodman contends the ALJ erred by not considering her prior work record as substantial evidence of her credibility, the ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is acknowledged and considered, as in this case. See *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). The ALJ considered Ms. Goodman's work history as part of his analysis and consideration of her RFC (Tr. at 766), which is sufficient.

Ms. Goodman also challenges medical opinion evidence about her functional limitations. First, she argues that the ALJ improperly considered a *lack* of opinion evidence from her treating doctors as support for his credibility determination. The Court is mindful that an absence of an opinion does not constitute substantial evidence supporting the ALJ's findings. See *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001). However, the ALJ did not specifically indicate that lack of opinion evidence counted against Ms. Goodman's credibility, and any error in this regard would be harmless, since the ALJ's determination is supported by other substantial evidence in the record. Second, she urges that the ALJ erred by failing to explain his reasoning for rejecting the opinion of her treating physician, Dr. Surinder Sra. But Ms. Goodman's attempt to characterize an October 2016 treatment note as a treating physician's opinion is unavailing. While conducting a physical exam, Dr. Sra noted Ms. Goodman was "uncomfortable in all position[s] of sitting" and "unable to stand up without help." (Tr. at 1190). This was a clinical observation made during a physical exam, not a physician's opinion concerning her functional limitations. The ALJ did not err in failing to announce or explain a specific rejection of this treatment note. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (ALJ is not required to discuss all evidence submitted).

Finally, Ms. Goodman asserts the ALJ ignored her testimony about the effects of her prescribed medications on her mental functioning. But the only evidence she cites in support of this argument was explicitly considered in the ALJ's opinion. The ALJ

specifically stated he considered the dosage, effectiveness, and side effects of medication. (Tr. at 763). He extensively covered the side effects as reported in Ms. Goodman's pain questionnaires, function reports, treatment notes, and hearing testimony. (Tr. at 763-66). The ALJ noted that Ms. Goodman consistently failed to tell treatment providers about side effects from her medications, including "brain fog." The ALJ did note that in July 2016, after a week of taking gabapentin, Ms. Goodman reported intolerance due to sedation. Her neurologist recommended a gradual increase and noted that if the side effects did not improve, he would try another medication. (Tr. at 530). In August, her primary care doctor noted she had "done well on higher dose of gabapentin and her pain is u/c [under control] now" (Tr. at 550), and in October, her neurologist noted she had been "doing well" with the increased dose (Tr. at 745). Ms. Goodman fails to cite any other instances in the medical record of complaints she made regarding the side effects of her medications. Substantial evidence supports the ALJ's conclusion that while there was a prior need for adjustment in medication, the evidence demonstrated Ms. Goodman had an overall tolerance of medications as prescribed or that her tolerance changed gradually over a specified period.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence on the record as a whole. The ALJ's determination that Ms. Goodman was not disabled is within the purview of the Social Security Act, consistent with regulatory criteria, and in accordance with relevant case law. The finding that Ms.

Goodman was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 8th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE